WATKINS, Judge.
This is an appeal from two consolidated suits brought by E. Lionel Pavlo Engineering Co. (Pavlo) against the State of Louisiana, through the Department of Transportation and Development (DOTD), certain employees of DOTD and Buchart-Hom, Inc. The original suit (No. 245,766) sought an injunction and a writ of mandamus. The DOTD filed an exception of no cause of action, which the trial court sustained. Pavlo appealed. We overruled the exception of no cause of action and remanded the case for further proceedings. (E. Lionel Pavlo Engineering Co. v. State, 429 So.2d 454 (La.App. 1st Cir.1983)). Upon the return of the suit to the trial court, Pavlo amended its petition to seek damages for breach of contract. The trial court, after trial on the merits, rendered judgment dismissing plaintiffs suit. The second suit (No. 251,595) sought judicial review of an alleged adjudication proceeding within the DOTD. This suit was dismissed by the trial court on exceptions of no cause of action and mootness. We affirm both judgments of the trial court.
On December 15, 1966, the DOTD and Pavlo entered into a contract under which Pavlo was to design access roads to the Paris Road (Gulf Outlet Bridge) in New Orleans. Environmental suits and difficulty with adjoining landowners delayed work on the project, the delay being in no way the fault of Pavlo. Due to these and other factors the scope of the project was substantially changed. In 1973 the DOTD still was not able to determine the ultimate scope of the project or when it would be in a position to authorize Pavlo to proceed with the preparation of plans for the final phase of the project. The DOTD, being of the view that under the circumstances it would be inequitable to hold Pavlo to the original contract, in 1973 addressed the following letter to Pavlo:
May 21, 1973
STATE PROJECT NO. 700-05-58
FEDERAL AID PROJECT NO. I-UI-410-5(110)261
PARIS ROAD (GULF OUTLET BRIDGE TO 1-10)
ROUTE 1-410
ORLEANS PARISH
E. Lionel Pavlo Engineering Co.
62 Fifth Avenue
New York, N.Y. 10019
Gentlemen:
With reference to your letter of March 27, 1973, to Mr. Marshall W. Wroten, Assistant General Counsel, we wish to advise you that it is our opinion that the proper procedure relative to the preparation of final plans for the captioned project is to have the present contract cancelled upon conclusion of the preliminary plan preparation phase and to negotiate a new contract, when we are in a position to proceed with authorizing you with final plan preparation ... the new contract to be negotiated on then current rates. (See Mr. Wroten’s letter to me of May 18,1973, and mine to Mr. Wroten of May 14, 1973, and April 16, 1973, all enclosed herewith).
If you are agreeable to this course of action, please so advise and we will seek the Federal Highway Administration’s concurrence.
Sincerely yours,
*654 /s/Frank M. Heroy, Jr., P.E. Assistant Chief Location & Design
Engineer FMH,jr/cs Enclosures Cc:
Mr. S.L. Poleynard
Mr. A.B. Ratcliff, Jr.
Mr. W.A. Patrick
Mr. Jack R. Reid
Mr. D.D. White
Mr. J.L. Wax
Mr. D.W. Toler
Mr. D.S. Huval
Mr. Marshall W. Wroten
In reply, Dr. E.L. Pavlo, President of E. Lionel Pavlo Engineering Co., wrote the following letter to Frank M. Heroy, Jr., of the DOTD:
May 24, 1973
Mr. Frank M. Heroy, Jr., P.E.
Assistant Chief Location and Design Engineer
State of Louisiana Department of Highways
P.O. Box 44245, Capitol Station Baton Rouge, Louisiana 70804
Re: State Project No. 700-05-58
Federal Aid Project No.
I-UI-410-5(110)261
Paris Road (Gulf Outlet Bridge to 1-10)
Route 1-410 Orleans Parish
Dear Mr. Heroy:
Thank you for your letter of May 21, 1973 indicating the Department’s recommended procedure of resolving the inequity of performing future final plans pursuant to the lump sum fee established in the Agreement of December 15, 1966.
The suggested cancellation of the 1966 Contract and negotiation of a new contract when the Department is in a position to authorize us to proceed with the final plan preparation is an equitable procedure and we are, of course, agreeable to this course of action.
Very truly yours,
E. LIONEL PAVLO ENGINEERING CO.
E.L. Pavlo President
ELP:SO
Both Frank M. Heroy, Jr. and Jack R. Reid, former Chief Location and Design Engineer for the DOTD, testified that from the time this exchange of letters took place until early 1980, the. DOTD intended to award the contract for the Paris Road Project to Pavlo, assuming an agreement could be reached. Pavlo continued to perform engineering services required for the preparation of preliminary plans under the original contract dated December 15, 1966, and to submit invoices for this work, which the DOTD paid.
At the same time that it was working on the Paris Road Project, Pavlo was also working on a design for the piers to support the Greater New Orleans Mississippi River Bridge No. 2 (GNO No. 2). Correspondence was exchanged between Pavlo, Modjeski and Masters, and Eustis Engineering, which were working on other phases of the plans for the GNO No. 2, about the stability of Pier No. 3, which was to be constructed in the bed of the Mississippi River. During the period 1973-1980 Dr. Pavlo traveled from his office in New York to Louisiana on many occasions to discuss the Paris Road Project, the GNO No. 2, and the Gramercy Bridge Project on which he was also performing services for the DOTD.
On January 4, 1980 the DOTD informed all interested parties that Pavlo had satisfactorily completed its work for the preliminary plans on the Paris Road Project under the original contract dated December 15, 1966, and that by agreement of the parties (as evidenced by the 1973 letters set forth above) the contract was terminated effective January 4, 1980.
Pavlo and the DOTD engaged in negotiations concerning further work on the Paris Road Project, which culminated in a letter from Mr. Heroy requesting Dr. Pavlo’s attendance at a meeting to be held on January 17, 1980, to submit a proposal for engineering services for the final plans for the *655 Project. Thereafter, the proposed conference between Pavlo and the DOTD took place on January 17, 1980, in the DOTD’s office, which resulted in the preparation by Pavlo of a proposal for a contract for the final plans for the Paris Road Project. On March 14, 1980, Pavlo’s proposal was submitted to the DOTD. Coincidentally, on that same date, March 14, 1980, final plans for the substructure of GNO No. 2 were submitted by Pavlo to the DOTD. Before the final plans for the substructure of GNO No. 2 were submitted by Pavlo, an extensive exchange of correspondence had taken place between Pavlo, Modjeski and Masters, and Eustis Engineering concerning the stability of Pier No. 3 of the GNO No. 2. There was concern that the scouring process in the river bed would weaken Pier No. 3 unless a caisson-supported pier was used, as opposed to a pile-supported pier. However, this problem was resolved and all of the consultants agreed to go with a pile-supported pier. Accordingly, Pavlo prepared and submitted plans for Pier No. 3 March 14, 1980, which called for a pile-supported pier.
On March 27, 1980, Dr. Pavlo appeared in the DOTD office and raised once again the question of whether a caisson-supported pier or a pile-supported pier for Pier No. 3 of the GNO No. 2 should be used or whether an alternate type structure, such as possibly a suspension bridge, should be used. According to Mr. Reid, Chief Design Engineer for DOTD, although the relationship between the DOTD and Pavlo had been declining since the first of the year, this was “the straw that broke the camel’s back.” Mr. Reid testified that the reason for the DOTD’s extreme dissatisfaction with Pavlo again raising the question of the design for Pier No. 3 was the fact that there had been extensive discussions and correspondence between the three consulting firms and also the DOTD relative to the design for Pier No. 3 which culminated in a meeting on February 28, 1980 with the DOTD and the three consulting firms. At that meeting Pavlo and the other consulting firms agreed on the pile-supported design and stated they had no reservations. The DOTD concluded that this matter had been put to rest. Yet within two weeks after Pavlo delivered to the DOTD a signed set of plans certifying they were ready to go to contract, he advised the DOTD “that the plans may not be good.” This indecisiveness on the part of Pavlo on a project of this magnitude led the DOTD to conclude that they could not effectively work with the Pavlo firm.
The Consultant Selection Committee, an internal DOTD advisory group, met shortly thereafter and made three recommendations to the Secretary of the DOTD, George Hardy:
(1) That negotiations with Pavlo on the Paris Road bridge be discontinued.
(2) That Pavlo be taken off the Gramer-cy Bridge, which was under construction upriver from New Orleans.
(3) That no further work be given Pavlo in the State of Louisiana.
The second of these recommendations was never acted upon by the Secretary, and Pavlo was permitted to complete its work on the Gramercy Bridge. However, on December 3, 1980, Mr. Reid, Chief Design Engineer for the DOTD, addressed a letter to Pavlo notifying Pavlo that further negotiations on the Paris Road Project would be discontinued. Pavlo addressed a letter to Reid dated December 24, 1980, stating its objection to the DOTD’s decision.
By Dr. Pavlo’s own admission in letters to the DOTD, Pavlo and the DOTD engaged in extensive negotiations in regard to a final contract with the DOTD on the Paris Road Project, and we find in the testimony of Mr. Reid and Mr. Heroy that the DOTD intended to enter into a new contract with Pavlo in the years between 1973 and 1980. The DOTD understandably became disillusioned with Pavlo when Dr. Pavlo appeared in the DOTD office on March 27, 1980, and questioned the safety of his design of Pier No. 3 of GNO No. 2, because of its calling for a pile-mounted pier when Pavlo’s signed plans submitted earlier that month, on March 14, 1980, called for a pile-mounted pier for Pier No. 3. The working relationship between Pavlo and DOTD deteriorated markedly because of Dr. Pavlo’s appearing to call his own *656 plans into question. We therefore find that the DOTD acted in good faith in its negotiations with Pavlo and cannot say that it was not justified in not awarding the project to Pavlo, in view of Dr. Pavlo’s own indecisiveness.
The exchange of letters between Mr. Heroy of the DOTD and Dr. Pavlo which we quote above, dated May 21,1973, and May 24, 1973, respectively, did not constitute a binding contract for the DOTD and Pavlo to do anything but to engage in negotiations in good faith when the time was ripe for preparation of final plans for the Paris Road Project. We have found from the testimony and exhibits that negotiations were conducted in good faith on both sides until the final split occurred between the DOTD and Pavlo in March of 1980, a result of Dr. Pavlo’s questioning his own plans.
Pavlo contends that in E. Lionel Pavlo Engineering Co. v. State, supra we held that the 1973 exchange of letters between the DOTD and Pavlo constituted a binding agreement to award the contract for the final plans for the Paris Road Project to it. However, we held that assuming that the 1973 exchange of letters were taken standing alone, without the introduction of evidence, Pavlo had stated a cause of action for breach of contract.
The trial court made extensive findings of fact, in its carefully prepared reasons for judgment, almost all of which Pavlo disputes in its briefs on appeal. We agree with Pavlo that some of these findings of fact are manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So. 2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). However, the incorrectness of these findings of fact do not cause us to alter our basic conclusions that the 1973 exchange of letters created an obligation on the part of both Pavlo and the DOTD to negotiate in good faith toward entering into a new contract, and that the DOTD was justified in terminating negotiations when Dr. Pavlo raised doubts as to the reliability of his design when he questioned the safety of his own plans for GNO No. 2.
Pavlo also contends that the DOTD’s Consultant Selection Committee failed to comply with the requirements of the Administrative Procedure Act (LSA-R. S. 49:950 et seq.). However, the Administrative Procedure Act does not apply to the Consultant Selection Committee, which is merely an internal advisory body within the DOTD. The recommendations to the Secretary of DOTD by the Consultant Selection Committee are clearly not adjudications under the Administrative Procedure Act. Delta Bank & Trust Company v. Lassiter, 383 So.2d 330 (La.1980).
In summary, we find that the 1973 exchange of letters did not obligate the DOTD to award the contract for the final plans of the Paris Road Project to Pavlo, but only to negotiate in good faith. Both the DOTD and Pavlo did negotiate in good faith. The DOTD was justified in breaking off negotiations when the relationship between the DOTD and Pavlo deteriorated greatly because of Pavlo’s questioning its plans for GNO No. 2. We find no breach of contract on the part of either party as to the Paris Road Project.
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.