697 So.2d 739 (1997)
BELL OAKS, INC.
v.
LOUISIANA DEPARTMENT OF HEALTH & HOSPITALS.
No. 96 CA 1256.
Court of Appeal of Louisiana, First Circuit.
June 26, 1997.
Rehearing Denied July 24, 1997.
*740 A. Edward Hardin, Joseph A. Prokop, Jr., Baton Rouge, for Plaintiff-Appellee Bell Oaks, Inc.
Mary Dozier O'Brien, Department of Health & Hospitals, Bureau of Legal Services, *741 Baton Rouge, for Defendant-Appellant Louisiana Department of Health & Hospitals.
Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
The State of Louisiana, through the Department of Health and Hospitals ("DHH"), appeals the judgment of the district court, which ordered it to issue a license to Bell Oaks, Inc. ("Bell Oaks") for a community home serving non-ambulatory mentally retarded adults in Webster Parish, and further ordered DHH not to take any steps to rescind a license it had already issued for such a home to Statewide Community Homes, Inc. ("Statewide").

FACTS AND PROCEDURAL HISTORY
In late 1993, DHH was notified by the Office for Citizens with Developmental Disabilities that there was a need for a community home for non-ambulatory mentally retarded adults in Webster Parish. Based on this determination of need, DHH issued a solicitation for applicants to provide a four-bed home for this purpose. Three applications were submitted, including applications from Bell Oaks and Statewide. The applications were reviewed and scored by a three-person committee of DHH employees. The committee recommended that the license be awarded to Statewide; DHH approved this recommendation and notified the applicants of its decision.
Bell Oaks requested a "fair hearing" concerning this determination, and an administrative hearing was convened. Statewide was granted permission to intervene in this proceeding. A hearing was held before an administrative hearing officer, who affirmed the DHH decision to disapprove the application of Bell Oaks.
Bell Oaks filed a petition for judicial review with the district court, and Statewide was again permitted to intervene. After a brief hearing at which counsel for the parties presented their arguments, the district court modified the decision of the administrative hearing officer. The court ruled in favor of Bell Oaks, ordering DHH to issue it the license it sought, but also ordered DHH not to revoke or rescind the license already awarded to Statewide for the same services. The complete text of the court's written reasons for judgment is as follows:
Bell Oaks, Inc. filed this Petition for Judicial Review contesting the award of [a] contract to Statewide Community Homes, Inc. to operate a group home in Webster Parish. Statewide was granted the contract by Department of Health and Hospitals and this decision was upheld by the administrative hearing officer. Statewide, the party who was awarded the contract, filed a motion to intervene in this case. This motion was granted at the hearing on February 21, 1996.
At the hearing, the Petitioner argued that the decision of Department of Health and Hospitals and the Administrative Law Judge was manifestly erroneous. It asked the Court to rectify the situation by ordering the agency to issue a license to Bell Oaks and not take away Statewide's license. In response to this request, Department of Health and Hospitals argued primarily that the decision to grant the license to Statewide should be upheld. It did not appear to oppose the granting of a license to Bell Oaks also.
After argument of the parties, the Court granted the relief requested by Bell Oaks and ordered that the State not take away the license it issued to Statewide.
The court signed a judgment in accord with these reasons. DHH appealed this judgment, arguing that the district court erred in modifying the decision of the administrative hearing officer without making the findings required by the standards for judicial review set forth in LSA-R.S. 49:964(G).

REVIEW OF DISTRICT COURT JUDGMENT

Applicable Law
In 1990, LSA-R.S. 40:2116 was enacted, requiring DHH to establish a facility need review process consistent with the regulations for Title XIX of the Social Security Act *742 (Medicaid).[1] According to the statute, the rules are to include procedures for DHH review of applications, procedures by which applicants can request a fair hearing from a determination made by DHH, and provisions for judicial review from the decision rendered after a fair hearing. LSA-R.S. 40:2116(B)(6), (7), and (8). The statute further provides:
C. No new facility, service, or beds as described in R.S. 40:2116(B)(1) shall be certified to participate in the Title XIX program without the approval of the department based upon a determination of a need therefor in accordance with the provisions of this Part. Any person establishing, managing, or operating a new facility, service, or bed without the approval required by this Part shall be prohibited from participating in the Title XIX program.
LSA-R.S. 40:2116 also specifies that the review process, and the rules and regulations by which it is conducted, are to be in accordance with the Administrative Procedure Act, LSA-R.S. 49:950 et seq.
A person who is aggrieved by a final decision or order in an adjudication proceeding under the Administrative Procedure Act is entitled to judicial review pursuant to LSA-R.S. 49:964. The review is conducted by the court and is confined to the record which was developed in the adjudication proceeding. LSA-R.S. 49:964(F). The court may affirm the agency decision or remand the case for further proceedings. However, in order to reverse or modify the decision, the court must find that substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. LSA-R.S. 49:964(G); Save Ourselves, Inc. v. Louisiana Environmental Control Com'n., 452 So.2d 1152, 1158 (La.1984); Matter of E.I. du Pont de Nemours & Co., Inc., 94-2549 (La.App. 1st Cir. 4/24/96), 674 So.2d 1007, 1011.

Application of Law to Facts
The district court upheld the award of a license to Statewide for the four-bed community home in Webster Parish, but also modified the decision of the administrative hearing officer by ordering DHH to award a license to Bell Oaks for the same purpose. In order to modify the decision, the court was required to find that substantial rights of Bell Oaks had been prejudiced because one or more of the errors enumerated in LSA-R.S. 49:964(G) tainted the decision.
In written reasons for judgment, the district court made reference to the appellant's contention that the decision of the administrative hearing officer was manifestly erroneous, which is one of the criteria set forth in the statute for modification of a decision. However, the written reasons do not state that the court actually found manifest error, and do not indicate how or in what particulars the decision was clearly wrong. Even if we were to infer from the written reasons that the court believed there was manifest error in some aspect of the administrative hearing officer's decision, that decision cannot be modified without an additional finding that substantial rights of the appellant were prejudiced. The district court made no findings in this regard either. This court cannot simply conjecture as to what the district court might have thought was manifestly erroneous in the administrative hearing officer's decision, when the court provided no hint of the basis for its conclusion, and did not make any of the requisite findings. Absent these findings, including satisfaction of at least one of the criteria set forth in *743 LSA-R.S. 49:964(G), the district court had no authority to modify the decision reached in the adjudication.
Additionally, because only one four-bed community home was needed to provide services to non-ambulatory mentally handicapped persons in Webster Parish, the district court's order that a second such home be licensed by DHH in the same area to provide the same services would require the state to violate its own regulations, Louisiana law, and federal Medicaid provisions. The district court's order would force DHH to certify and license the Bell Oaks facility for participation in the Medicaid reimbursement program without basing its approval on a determination of need, which is required by LSA-R.S. 40:2116(C). By the terms of that statute, any facility so established would be prohibited from participating in the Medicaid reimbursement program. Accordingly, the district court's judgment orders DHH to do something which is impossible. There is no way for DHH to follow its procedures to certify a Bell Oaks facility in addition to the Statewide facility already certified, because the Office for Citizens with Developmental Disabilities, which is the entity designated by DHH to inform it of the need for such a facility, notified DHH that only one such home was needed in Webster Parish. If DHH were to allow Bell Oaks to establish a second community home for non-ambulatory mentally handicapped persons in Webster Parish, and were then to certify it for Medicaid reimbursement without following its procedures, that facility would, under the terms of the statute, be prohibited from participation in the Medicaid reimbursement program.
This court must review the district court's judgment in light of the standards set forth in LSA-R.S. 49:964(G). We conclude that the district court committed an error of law by modifying the result of the adjudication without any attempt at making the findings required by the statute. The district court also committed legal error by ordering DHH to do what is legally impossible. Consequently, we must reverse the judgment.
This court has before it the complete record of the adjudication before the administrative hearing officer. Accordingly, rather than remand the case to the district court, we will review the record of the administrative hearing, using the criteria set forth in LSA-R.S. 49:964(G), to determine whether the hearing officer's decision should be affirmed, modified, or reversed.

REVIEW OF ADMINISTRATIVE HEARING DECISION

Applicable Law
Pursuant to the guidelines established by LSA-R.S. 40:2116, DHH adopted policies and rules which were published in the Louisiana Register, Vol. 17, No. 1, pp. 61-67 (1991), as §§ 12501, 12502, and 12505 of Title 48 of the Louisiana Administrative Code. Portions of the rules were amended, and the latest revisions dealing with the type of community home at issue in this case were adopted as emergency rules on November 1, 1993, and published in the Louisiana Register, Vol. 19, No. 11, pp. 1407-08 (1993), as a revision of § 12502(A)(6). Under the authority of LSA-R.S. 49:954(B)(2), the emergency rules became effective on their adoption date.[2] These rules were used in making the solicitation for the community home at issue in this case and were also used in evaluating all the applications submitted under the solicitation.[3]
In accordance with the mandate of LSA-R.S. 40:2116(B), the rules governing the facility need review process include provisions for DHH review of applications, for a fair hearing from a DHH determination, and for judicial review of a final decision after such a hearing. The application and review procedures are described in § 12502(A)(6). Proposals received in response to a solicitation of offers are independently evaluated and points are assigned to ten key items of the application. La. Admin. Code *744 48:12502(A)(6)(d)(v). The compiled points for each application are then compared, and the applicant with the highest score is approved. La. Admin. Code 48:12502(A)(6)(d)(vi-ix).
The right to a fair hearing is found in § 12505(C), which provides that when DHH refuses to grant approval to an applicant, that applicant shall have the right to an administrative appeal. The hearing is to be conducted by a hearing officer designated by the governor, after notice to all parties involved. La.Admin.Code 48:12505(C)(2) and (11). After DHH and the applicant present testimony and evidence, any interested party, including members of the public, may provide testimony and present arguments. La.Admin.Code 48:12505(C)(9). Under § 12505(C)(13), judicial review of the decision of the hearing officer is available, but only to an applicant who is aggrieved by the decision; that judicial review is to be in accordance with LSA-R.S. 49:964.
The internal recommendation of an advisory body within an administrative agency is not an adjudication. E. Lionel Pavlo Engineering Co. v. State, Through Dept. of Transp. and Dev., 521 So.2d 652, 656 (La. App. 1st Cir.), writ denied, 523 So.2d 234 (La.1988). An "adjudication" means the agency process for the formulation of a decision or order. LSA-R.S. 49:951(1); Parochial Employees' Retirement System of Louisiana v. Caddo Parish Com'n, 95-0243 (La. App. 1st Cir. 3/15/96), 676 So.2d 105, 107, writ denied, 96-0955 (La. 5/31/96), 673 So.2d 1031. A "decision" or "order" means the whole or any part of the final disposition of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing. LSA-R.S. 49:951(3); Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330, 333 (La.1980). In an adjudication, all parties shall have the opportunity to respond and present evidence on all issues of fact involved, to argue all issues of law and policy involved, and to cross examine witnesses to obtain a full and true disclosure of the facts. LSA-R.S. 49:955(C). Evidence in an adjudication may include expert testimony and materials and reports not initially considered by the agency in making its determination. See, e.g., Matter of Dravo Basic Materials Co., Inc., 604 So.2d 630, 636-37 (La.App. 1st Cir.1992).
Agency employees assigned to render a decision or to make findings of fact and conclusions of law in a case of adjudication noticed and docketed for hearing are not to communicate, directly or indirectly, in connection with any issue of fact or law, with any party or his representative, except upon notice and opportunity for all parties to participate. LSA-R.S. 49:960(A). These provisions exist to insure that the agency determines the facts as a neutral decision maker, and to maintain the crucial appearance of fairness. See, In re Georgia Gulf Corp. v. Board of Ethics for Public Employees 96-1907, p. 8 (La. 5/9/97), 694 So.2d 173, 177.
In reviewing facts in administrative proceedings, the hearing officer's findings are entitled to great weight and will not be disturbed on appeal absent manifest error. Hospital Corp. of America v. Robinson, 499 So.2d 246, 250 (La.App. 1st Cir.1986). However, where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La. 2/20/95), 650 So.2d 742, 747. When legal error so taints the process that the court cannot conduct judicial review, remand for a new hearing is the appropriate remedy. See In re Georgia Gulf Corp., 96-1907, p. 13, 694 So.2d 173, 179.
The Administrative Hearing
Evidence adduced at the administrative hearing consisted of the DHH file in this case with the solicitation package and legal notices, the completed applications from the three applicants for the Webster Parish community home, the evaluation forms used to review and grade the applications, the notification letters to the successful and disapproved applicants, and other memoranda and correspondence concerning this facility need review process. The three DHH employees who served on the evaluation committee, *745 Louise Dubroc, Charles Lazare, and Dr. Jerry Vincent, testified concerning their qualifications and the methods and criteria they used in grading the applications. Louis Lyles, a DHH administrator of the facility need review program, testified about the solicitation procedure, selection of the evaluation committee, the review process, and the events leading up to the hearing.
The Webster Parish community home at issue in this case was only one of thirty facilities for which applications were solicited; over 240 responses were received for evaluation by the review committee, three of which pertained to the home to be established in Webster Parish. The committee members reviewed the proposals and attached documents in the application packages for each home and assigned 0-4 points for each of ten items on an evaluation score sheet. The items being rated included the following:
1. Work Plan: schedule, dates, responsibilities, certification;
2. Site Availability: specific, map, photo, neighborhood, access, ownership proof;
3. Agreements [with other health care and service providers]: type, amount, appropriate services, match budget, letters;
4. Provider Access: proximity, adequate number;
5. Funding: capability, balance sheet and income, budget;
6. Key Personnel: experience, type, ratios, staffing pattern;
7. Services & Program: program description, forms (optional), organization chart, medication & tracking systems, position descriptions;
8. Community: integration & needs;
9. Quality of Life: extra services, daily schedule, day program; and
10. Client Rights: individuality, transfer plan in and out, choice, floor plan.
After scoring the applications independently, the reviewers met or conversed by telephone to compare their scoring and to achieve a consensus, if possible. For the Webster Parish community home, the reviewers gave Statewide's application a score of 18; the applications submitted by Bell Oaks and the third applicant received only 16 points each. The completed evaluation score sheets showing these scores from Ms. Dubroc and Mr. Lazare were submitted into evidence; Dr. Vincent testified he had destroyed his worksheets after completing the scoring process. However, all three reviewers agreed these scores were appropriate, and they reached a consensus to recommend Statewide.
The evaluation committee's recommendation was accepted by the Secretary of DHH, Rose V. Forrest, who notified Statewide in a June 23, 1994 letter, stating:
Your application to establish the above referenced community home has been reviewed and has been recommended for approval by the RFP Evaluation Committee. The department intends to issue it's (sic) approval of this proposal unless a disapproved applicant timely files a request for an administrative appeal, in which case the issuance of the approval shall be suspended until the final decision of such appeal.
When Bell Oaks was notified that its application had been disapproved, it made a timely request for a hearing to formally appeal the recommendation of the evaluation committee. DHH notified an administrative hearing officer and a date for the hearing was set.
Several weeks before the scheduled hearing, Mr. Lyles sent a memorandum to the three members of the evaluation committee, to the agency's general counsel, Bruce Waters, and to the attorney representing Statewide, Kathryn Lichtenberg, asking them to meet with him regarding the "Bell Oaks, Inc. Fair Hearing." Mr. Lyles said Mr. Waters had instructed him to set up the meeting, and that the purpose of the meeting was to review the upcoming appeal and give Ms. Lichtenberg a "sense of what we had done in the process." Neither Bell Oaks nor its attorney received notice of this meeting, and Bell Oaks was not present or represented at the meeting. Mr. Lyles opined that the meeting was appropriate because DHH was aligned with the winner in this case, Statewide, who "was basically going to represent-present *746 the case of the Department" at the administrative hearing.
In her opening statement at the administrative hearing, Ms. Lichtenberg asserted a continuing objection to the admission of any evidence concerning Statewide's application, contending the scope of the hearing was limited to a review of the points allocated to the Bell Oaks application, and should not include any comparisons between the two applicants. In response, the hearing officer commented:
Well, I understand the objection. It's difficult for me to make a ruling without any specific references, but I will say this. Although the policies and procedures relate that the Appellant has the right to appeal the rejection of his application only[,] references to other applications in the application process being irrelevant.... I'm going to admit it, but not necessarily conclude at this point that it's even relevant.
Ms. Dubroc and Mr. Lazare testified concerning their evaluations of each of the ten items for which scores were assigned during the review process. Each referred to the score sheets they had compiled for Statewide and Bell Oaks and explained notations and the grades ultimately assigned to each category. Dr. Vincent, having destroyed his notes and evaluation sheets, had no independent recollection of the applications from Statewide and Bell Oaks, and could only testify concerning the procedure he used in reviewing them.
Through the testimony of Ms. Dubroc and Mr. Lazare, certain key differences between the two proposals were noted, and the applications themselves reveal others. Statewide was a new business entity formed specifically to acquire certificates of need and operate community homes; it applied for twenty-seven homes across the state in response to this solicitation. Bell Oaks was incorporated as a not-for-profit entity in 1977 and had operated community homes for mentally retarded adults for seventeen years; it applied for three homes near its location in Springhill. Bell Oaks already owned the property in Springhill it proposed to use for this community home; the house had previously been used as a community home for six residents, had passed inspections by the State Fire Marshall and DHH, and was being modified for four non-ambulatory residents. Statewide proposed to locate its facility at No. 3 Shane Drive in Minden, but it did not own that residence. The property's availability was evidenced by a purchase agreement; however, that document expired by its terms on May 31, 1994, before the review process was complete. More significantly, it was not binding on the seller, who retained the right to sell to someone else if any other written purchase offer were received.[4]
Because Bell Oaks was already doing business in Springhill, it had existing contracts with local and regional health care providers who had been treating its other residents for years. Statewide had contracts with some health care providers and agreements to enter into contracts with others, but except for a registered nurse out of New Orleans, the proposal did not indicate where any of these providers were located, their qualifications, or their proximity to the proposed community home.[5] Statewide did not have care agreements with a dentist or medical doctor; Bell Oaks omitted a social worker and occupational therapist. Although Statewide did not have a contract with a day care program, its proposal anticipated using such a program from 9 a.m. to 3 p.m. each weekday, during which time its home would not be staffed at all. Bell Oaks had a contract with a day care facility, but its proposal also showed round *747 the-clock direct care staff at its community home. However, while Statewide accounted for day care expense in its budget (but did not have a contract with a day care provider), Bell Oaks omitted this item from its budget (although it did have a contract for such services). Both proposals provided job descriptions for employees, but only Bell Oaks described the qualifications its new employees would have to meet, as well as the educational background and experience of its existing staff.
To meet operating costs for this home for the first three months, Bell Oaks had a cash balance of $35,000, plus an irrevocable letter of credit from Springhill Bank & Trust Company for $30,000, good until January 1995.[6] Statewide proposed funding all the homes it had applied for out of the personal financial resources of its sole owner, whose unaudited financial statement showed $350,000 cash, plus a physician's $1 million irrevocable letter of credit good through mid-July 1994, and a $250,000 letter of credit from the Whitney National Bank for the same period. Bell Oaks had a financial statement which reflected its current condition after years of operation, whereas Statewide could only project its financial condition.
The Decision of the Administrative Hearing Officer
After hearing the testimony and reviewing the documentary evidence, the administrative hearing officer concluded in written reasons for his decision that:
No evidence was presented at the time of Hearing to support Appellant's contention that the Committee's Decision was incorrect; that its Application should have received as many points as, or more points than, Statewide; or that Statewide should have received less points. Although some evidence was introduced in an attempt to discredit Statewide and bolster Appellant's Application, each Committee Member provided credible testimony that the Committee's scores were appropriate. It should be noted that Appellant's primary task was to convince me that its score should have been raised. No evidence was presented that the scoring utilized was inconsistent and/or unfair. Simply stated, Appellant's evidence in support of its Appeal was not sufficient to support its contention that the Committee's recommendation was incorrect.
Concerning the procedure used in the hearing, the hearing officer indicated that the scope of his review was restricted to the respective applications submitted to DHH by the applicants, and that he could not review or receive evidence of anything beyond the contents of those applications and the procedure used in evaluating them. In further explanation of this limitation, he stated:
The foregoing becomes particularly significant when [as in this case] there exist allegations that representations made by a successful applicant in its Application are false. Unless said representations are contradicted within the application itself, or their accuracy are otherwise tested within the parameters of this review process, the Evaluation Committee must accept the Application on its face; that the representations made therein are correct.
Citing LSA-R.S. 49:959 (which governs rehearings) and LSA-R.S. 49:964 (which governs judicial review) as demonstrating the applicable evidentiary and review standards for the hearing, the administrative hearing officer also stated:
I do not think that a "preponderence (sic) of the evidence test" is proper. Instead, a standard which incorporates an "arbitrary or capricious" standard is more appropriate.
Regarding the pre-hearing meeting attended by the review committee, DHH counsel, and counsel for Statewide, the hearing officer concluded:
Although DHH did "privately" consult with Statewide in preparation for the Appeal Hearing, the effect of the foregoing did not influence the outcome of the Application process since it occurred "after the *748 fact." ... It should also be noted that Appellant's reference to LSA-R.S. 49:960 is unfounded since this statute presupposes that a decision had not yet been rendered by the Agency.... If any of the Committee Members had communicated with Statewide prior to its decision, or any other decision maker, prior to adjudication, then Appellant's argument would be valid.
With these explanations for his decision, the hearing officer "affirmed" the DHH decision to disapprove the application of Bell Oaks.
Application of the Law to the Facts
It is clear from the comments of the hearing officer, as well as arguments made by counsel for Statewide and DHH, that the parties misconstrued the process in which they were involved. The parties, including the hearing officer, treated the committee's action as if it were the adjudication. This is legally incorrect. The committee's action was not an adjudication. The notification letter sent to the approved applicant reflects the true status of the matter at the point when DHH accepted its committee's recommendation. That letter from the Secretary of DHH correctly indicated that if a disapproved applicant requested a fair hearing, "the issuance of the approval shall be suspended until the final decision of such appeal." The adjudication process was not yet complete before the hearing.
When the committee recommended that Statewide be approved and Bell Oaks be disapproved for the community home involved in this matter, this recommendation was not a decision or order of the agency. There was no notice and no hearing involved in reaching this recommendation, both of which, by the definitions in LSA-R.S. 49:951(3), are required to reach a decision or order. The recommendation was merely an internal advisory opinion, reached by a committee of DHH employees, who reviewed the documents provided to them and consulted to some extent to reach agreement. Accordingly, the decision reached was not the product of an adjudication, which is defined by LSA-R.S. 49:951(1) as the agency process for the formulation of a decision or order.
As a result of this mistake concerning the process, the appearance of impropriety was created by the meeting in which Statewide, but not Bell Oaks, was invited to participate before the hearing. Although the review committee had completed the initial processing of the applications and made a recommendation to the agency, the adjudication was not yet complete when this meeting was held. Therefore, contrary to the hearing officer's observation, LSA-R.S. 49:960(A) was applicable at this point in the process. Even though the agency employees would not ultimately make findings of fact, they should not have been "aligned" with Statewide at this point in the process. The committee members, with their strong background and experience with Medicaid provisions and how those affected the proposed community homes, could have continued to provide impartial input concerning any factual information which might be developed at the hearing. This meeting with the Statewide attorney should either have been avoided, or should have included Bell Oaks. In this way, the process would not have been tainted by the appearance of unfairness created when DHH so completely aligned itself with the position of Statewide before and during the hearing.
The "fair hearing" before the administrative officer was the adjudication. It was conducted pursuant to LSA-R.S. 40:2116(B)(7), which specifies that the DHH rules governing the facility need review process must include procedures for an applicant to request a fair hearing from a determination made by the department. Following this statutory mandate, the rules provide that when DHH refuses to grant approval to an applicant, that applicant shall have the right to an administrative appeal. La.Admin.Code 48:12505(C)(1). Although this hearing is described as an "appeal" in the regulations and was treated as such by the hearing officer, it could not be an appeal, because under the statutory scheme, an appeal can only be taken from a final decision or order reached in an adjudication. LSA-R.S. 49:964(A). Without a prior adjudication, the administrative hearing could not be an appeal.
*749 Consequently, by limiting his review to documents already in the agency record and refusing to allow any information which might controvert the representations made in the applications, the hearing officer foreclosed the disapproved applicant's opportunity for a "fair hearing." This was legal error. An adjudication must allow the parties to present evidence on all issues of fact involved in the matter, in order to reach a full and true disclosure of the facts. LSA-R.S. 49:955(C).
Additionally, the rules applicable to judicial review of an adjudication, as described in LSA-R.S. 49:964, were not applicable to the administrative hearing. Therefore, the hearing officer also erred by "reviewing" the committee's action under the manifest error standard or arbitrary or capricious standard. Those standards are for the district court to apply when judicial review is sought by a person aggrieved by a final decision or order in an adjudication. LSA-R.S. 49:964(G). The administrative hearing was not a judicial review. It was the completion of the fact-finding process begun by the agency's solicitation of applications for community homes. The purpose of the hearing was not merely to determine whether the committee's decision was arbitrary or capricious. The purpose of the adjudication was to produce reliable, probative, and substantial evidence, upon which a rational decision could be made to approve one of the applicants for the community home.
Had the administrative hearing been conducted properly, the district court and this court would have had a complete record to review. Unfortunately, because of the limitations under which this hearing was erroneously conducted, the record is not complete. The record shows that at least one of the representations made by Statewide in its application, that a residence at No. 3 Shane Drive in Minden would be available and used for its facility, was incorrect. As a consequence of this misinformation, all the location-specific information provided about the proximity of needed health care services and access to community resources may be totally inaccurate. But because the parties proceeded under the erroneous conclusion that the entire hearing was limited to information within the applications and their attached documents, this court does not have the facts needed to determine whether the decision to award approval to Statewide was reasonable under these circumstances and was in accord with applicable regulations. Therefore, because this court does not have an "otherwise complete record" upon which to make a de novo review and base a decision, the case must be remanded to the agency for a "fair hearing" in accord with the applicable statutes and regulations.
We do not, by this opinion, ignore the fear expressed by the hearing officer that, if allowed to expand the record beyond the information presented in their applications, every unsuccessful applicant will seek a fair hearing regarding every agency recommendation. However, unless some of the information presented in an application is patently false or the review process is blatantly unfair, it is unlikely that the administrative hearing will produce facts requiring a contrary determination. After all, each applicant is required to certify that its application presents information that, to the best knowledge of the authorized agent making the representation, is complete, correct, and accurate. Any incorrect, invalid or incomplete information which may have influenced the approval of the application is grounds for withdrawal of approval. The "fair hearing" is the mechanism whereby any such misrepresentations or inaccuracies can be revealed, so that approval granted upon erroneous information can be withdrawn. Such corrective action at this early stage in the process is certainly less disruptive than having to withdraw certification from an unqualified entity after it has already invested funds in a facility, hired staff, and begun caring for mentally and physically impaired residents.

CONCLUSION
For the reasons expressed above, the judgment of the district court is reversed, and this case is remanded to DHH for a new hearing.
REVERSED AND REMANDED.
NOTES
[1] Before 1990, although a review process existed in substantially the same form, there was no Louisiana statute authorizing such a process and specifying its contents. The facility need review process used by DHH before the enactment of this statute was developed in accord with guidelines prescribed by federal statutes governing Medicaid reimbursement. For a more complete discussion of the interrelationship between the federal statutes and the state's responsibilities, see Greenbriar Nursing Home, Inc. v. Pilley, 93-2059 (La. 5/23/94), 637 So.2d 429.
[2] LSA-R.S. 49:954(B)(2) states, in pertinent part, that "an emergency rule shall become effective on the date of its adoption...."
[3] The emergency rules were finalized and published as rules in the Louisiana Register, Volume 20, No. 3, pp. 304-05 (1994).
[4] Indeed, pursuant to the authority of LSA-R.S. 49:955(E)(4), Bell Oaks proffered a cash deed showing the property at No. 3 Shane Drive in Minden was sold to an unrelated third party in July 1994. The record does not indicate where Statewide might put its community home if this property became unavailable. Of course, another location might not fit the proposal's description of the neighborhood, access to community resources, proximity to health care services, and other information required to be in the application.
[5] The Statewide application did not indicate the location of any of the health care providers with whom it had existing or potential contracts. The information concerning the RN's location is from notations made by the evaluators on their score sheets, apparently from their independent knowledge of this fact.
[6] Mr. Lazare admitted he had erred when completing the review score sheet, because he had considered these financial resources would be split between the three homes for which Bell Oaks had applied, rather than allocating all these resources to the Webster Parish home, as the proposal actually indicated.