| gPARRO, J.
Brenton P. Johnson appeals judgments granting the defendant’s peremptory exception of no cause of action,[1] granting the joint motion of defendant and intervenor to quash depositions, granting the defendant’s motion for summary judgment, and dismissing his petition for declaratory judgment. We affirm.
BACKGROUND
On October 16, 1995, Johnson filed a workers’ compensation claim against his employer, Southern Scrap Material • Company, Inc. (Southern Scrap), claiming compensation and medical benefits for alleged job-related exposure to toxic substances. On Friday, August 9, 1996, Johnson filed a motion for leave to supplement his claim to request class certification for all present and former Southern Scrap employees or contract employees with similar claims. On Monday, August 12, 1996, the director of the Office of Workers’ Compensation issued an emergency rule providing that no class actions would be permitted in workers’ compensation cases in Louisiana.[2] Relying on this emergency rule, on August 13, 1996, the workers’ compensation judge handling Johnson’s case denied his motion for leave to file the supplemental petition requesting class action certification.[3]
On February 24, 1997, Johnson filed this lawsuit against the Louisiana Department of Labor, Office of Workers’ Compensation (OWC), seeking a declaratory judgment that the emergency rule was invalid, because it was adopted without any imminent peril to the public health, safety, or welfare, which are the statutory criteria for adoption of emergency rules. He further alleged that the OWC had not met other | ^statutory requirements, because it failed to issue and promulgate a sufficient statement of its reasons for adopting the rule.
The OWC responded to the petition by filing a peremptory exception of no cause of action, claiming the petition should be dismissed because the emergency rule being challenged no longer existed. It had been replaced by a permanent rule to the same effect, which was duly promulgated and published in the January 20, 1997 Louisiana Register as Louisiana Adminis *900 trative Code 40:2123(D).[4] The OWC argued that, because Johnson’s petition for declaratory judgment was filed after the permanent, final rule had already become effective, his challenge to the “non-existent emergency rule” did not state a cause of action.
In response to this exception, Johnson supplemented and amended his petition to allege the final rule was also invalid, because the regulation exceeded-the authority of the OWC, was inconsistent with Louisiana laws permitting class actions, and violated the Louisiana Constitution. The OWC filed a dilatory exception of vagueness, and Johnson particularized his allegations in a second supplemental and amended petition. A petition of intervention was filed by SSX, L.C., the successor in interest to Southern Scrap and past employer of Johnson (hereafter jointly referred to as Southern Scrap), stating it was aligned with the OWC in opposing Johnson’s petition for declaratory judgment. After filing an answer, the OWC moved for summary judgment, seeking dismissal of Johnson’s petition.
Johnson excepted to the OWC’s motion for summary judgment as premature and moved for a continuance so adequate discovery could be had. Johnson had scheduled the depositions of the director and assistant director of the OWC. The OWC and Southern Scrap jointly moved to quash the depositions. Johnson obtained leave of court to file a third supplemental and amending petition, seeking an additional declaration that the newly promulgated rule could not be retroactively applied to his case to deny class action certification.
LA11 of the pending motions and exceptions were heard on December 1,1997. At that hearing, the court denied Johnson’s exception of prematurity and granted the motion to quash the depositions on the basis that there were no relevant facts that could be discovered that would affect the court’s ruling on the motion for summary judgment. Because a permanent rule had been adopted, the court granted the OWC’s exception of no cause of action as to the emergency rule. The court also granted the OWC’s motion for summary judgment and dismissed Johnson’s petition. In oral reasons for judgment, the judge noted that, although he personally disagreed with the rationale behind the rule, there appeared to be a rational basis for excluding class action procedures in workers’ compensation cases, and therefore the rule was not unconstitutional.
This appeal followed. Johnson claims the trial court erred in quashing the depositions and ruling on the motion for summary judgment without allowing him any discovery whatsoever. He also assigns as error the trial court’s conclusion that the OWC was entitled to judgment as a matter of law. Johnson alleges the facts suggest there was ex parte contact between a party to,an adversarial adjudication proceeding and the state agency administering the adjudication, and therefore discovery should have been allowed so the existence and nature of any such contact could be determined. He also suggests that, in the interests of due process, the prohibition against certain ex parte contacts found in LSA-R.S. 49:960 should be interpreted as prohibiting contacts between a party to an adjudication and members of the rule-making agency.
APPLICABLE LAW AND STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152, 1155. A motion for summary judgment is properly granted only if the pleadings, 1 .^depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *901 genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of actions. LSA-C.C.P. art. 966(A)(2); Robertson v. Northshore Regional Medical Ctr., 97-2068 (La.App. 1st Cir.9/25/98), 723 So.2d 460, 463.
The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that genuine issues of material fact remain. LSA-C.C.P. art. 966(C)(2); J. Ray McDermott, Inc. v. Morrison, 96-2337 (La. App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
DISCUSSION
In briefs and oral argument, Johnson vigorously attacks the sequence of events leading to the adoption of the emergency rule prohibiting the use of class actions in workers’ compensation cases. His supplemental petition asking for class certification was filed on a Friday afternoon; by Monday morning, the emergency rule prohibiting the use of such proceedings in workers’ compensation litigation had been adopted. The thrust of his arguments is that the rapidity with which this was accomplished strongly suggests that some ex parte communication occurred over that weekend between representatives of Southern Scrap and someone at the OWC, resulting in the adoption of the emergency rule. The depositions that Johnson had scheduled of OWC’s director and assistant director were to be directed toward discovery of any such contacts. Johnson contends that if such ex parte communications occurred, those contacts were a violation of statutory law.[5] His basic premise is that, if the promulgation of the | f,emergency rule was tainted by such irregularities, his rights to due process were violated.
In the context of an administrative proceeding, ex parte communications are discussed in LSA-R.S. 49:960(A), which states:
Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a case of adjudication noticed and docketed for hearing shall not communicate, directly or indirectly, in connection with any issue of fact or law, with any party or his representative, or with any officer, employee, or agent engaged in the performance of investigative, prosecuting, or advocating functions, except upon notice and opportunity for all parties to participate.
In Johnson’s brief to this court, he acknowledged that his research did not reveal any jurisprudence interpreting this provision as prohibiting ex parte contacts between a party to an adjudication and persons making rules governing the adjudication process. Our research similarly revealed that the jurisprudence has applied this prohibition to communications involving any issue of fact or law, which are made to those agency members or employees who are assigned to render a decision or make findings of fact and conclusions of law, but not to agency members who function only in a rule-making capacity and are uninvolved with the adjudication. See, e.g., Bell Oaks, Inc. v. Louisiana Dept. of Health & Hospitals, 96-1256 (La.App. 1st Cir.6/26/97), 697 So.2d 739, writ denied, 97-2202 (La.11/21/97), 703 So.2d 1313; Ogg v. Louisiana Bd. of Chiropractic Examiners, 602 So.2d 749 (La. App. 1st Cir.1992); In re Rollins Environmental Services, Inc., 481 So.2d 113 (La. *902 1985). We decline Johnson’s invitation to extend the prohibition further. At any given time, hundreds of cases involving administrative agencies are pending. If none of the parties to those cases could communicate with the rule-making members of those agencies while their cases were pending, the agencies would be cut off from valuable input needed to perform their functions. This court will not paralyze the many administrative agencies by extending the prohibition against ex parte communications beyond those who are actually charged with making findings of fact and conclusions of law and rendering decisions in pending cases.
17Moreover, Johnson admits, and the record shows, that all the steps leading to the promulgation of the permanent rule were accomplished in accordance with applicable law.[6] The proposed rule was noticed and published in the Louisiana Register, and interested parties had the opportunity to support or oppose the proposed rule. Johnson also acknowledges he did not take any steps to oppose the adoption of the permanent rule. Johnson has not alleged and admits he has no reason to believe that the workers’ compensation judge to whom his case was assigned for hearing was engaged in any ex parte contacts with any party to the litigation. Rather, counsel for Johnson stated at oral argument he believes the workers’ compensation judge simply applied the emergency rule to Johnson’s case when he learned of its adoption. Since then, of course, the workers’ compensation judge would have to reach the same result by applying the permanent rule.
Under these circumstances, we find no legal error in the trial court’s rulings in this case on the motion to quash the depositions or on the motion for summary judgment. Assuming for the sake of argument that all of Johnson’s suspicions concerning ex parte contacts are true, these contacts did not involve the workers’ compensation judge assigned to hear his case. The only remedy for such unauthorized communication is recusal of any deciding officer or agency member who, as a result of such ex parte contacts, cannot accord a fair and impartial hearing or consideration in the adjudication. LSA-R.S. 49:960(B). However, in this instance, nothing suggests the deciding officer, the workers’ compensation judge, was involved in the contacts or was unable to conduct a fair and impartial hearing as a result of such contacts. Moreover, even in those instances in which recusal might be justified as a result of ex parte contacts, there is no authorization for general discovery proceedings to determine if a ground for such recusal exists. The party must “discover” such facts on his own and then state them with particularity in writing before a recusal hearing is warranted. Louisiana State Bd. of Medical Examiners v. Golden, 94-0922 (La. App. 4th Cir.9/29/94), 645 So.2d 690, 691, writ denied, 95-0106 (La.3/10/95), 650 So.2d 1184.
More significantly, any such alleged improprieties were cured by the subsequent actions taken to promulgate the permanent rule. The procedural framework for the adoption of such a rule provides an opportunity for any substantive or procedural challenges to be heard and considered before the permanent rule is adopted. These procedures exist so those who have legitimate concerns about the proposed rule can voice them. Johnson does not dispute that those procedures were followed to the letter and admits he did not attempt to mount an opposition to the proposed rule at this step in the process. He does not allege any due process problems with respect to the adoption of the permanent rule. Because the permanent rule was properly adopted, all of Johnson’s allegations concerning possible ex parte communications with respect to the emergency rule were and are irrelevant. A trial court has broad discretion in discovery matters, including the right to *903 refuse or limit discovery of matters that are not relevant to the issues. Ward v. Tenneco Oil Co., 564 So.2d 814, 821 (La. App. 3rd Cir.1990). The trial court’s discretion in such matters will not be disturbed on appeal absent a clear showing of abuse of that discretion. Moak v. Illinois Cent. R.R. Co., 93-0783 (La.1/14/94), 631 So.2d 401, 406.
The only other legal argument raised by Johnson concerns the difference between this rule and those portions of Louisiana procedural law which allow class actions in other civil litigation.[7] He contends the adoption of a rule prohibiting class actions in workers’ compensation cases exceeded the statutory authority of the OWC and, by implicitly “repealing” the provisions allowing class actions in civil litigation, the OWC usurped a power granted only to the legislative branch.[8] We are not persuaded by this argument. Many of the procedures applicable 'to workers’ compensation cases |adiffer from other provisions of Louisiana law, in recognition of the unique relationship between the employee and employer, and in order to effectuate the prompt and equitable handling of such claims. Moreover, LSA-R.S. 23:1317(A) allows the workers’ compensation judge to deviate from technical rules of procedure other than those provided within the workers’ compensation law. Had the legislature intended to require the application of all the articles of the Louisiana Code of Civil Procedure in workers’ compensation litigation, there would be no need for the specific grant of authority to the director of the OWC in LSA-R.S. 23:1310.1(C) to adopt rules of procedure for such cases. In this statute, the legislature has granted to the OWC the power to make procedural law governing workers’ compensation proceedings, and has not reserved that power solely to itself. Moreover, the limitation in the challenged rule does not “repeal” the class action provisions in any way; it merely makes those provisions unavailable to workers’ compensation claimants. We find no legal error in the trial court’s judgment dismissing Johnson’s case.
CONCLUSION
For the stated reasons, we affirm the trial court judgments in favor of the OWC and Southern Scrap and dismissing Johnson’s case. All costs of this appeal are assessed against Johnson.
AFFIRMED.

. None of the assignments of error or arguments in this appeal address the court's ruling on the exception of no cause of action. Therefore, we assume the appellant does not challenge this ruling.

. The emergency rule amended Title 40, Section 2123 of the Louisiana Administrative Code by adding subsection D, which states, "No Class Action will be permitted.”

. After the workers’ compensation judge applied the emergency rule to deny Johnson's molion for leave to amend his petition to convert it into a class action, Johnson applied to this court for a supervisory writ seeking reversal of that ruling. This court granted Southern Scrap's motion to dismiss the writ application, holding that under LSA-R.S. 49:953(B)(3), Johnson’s only remedy was to seek a declaratory judgment in a district court. Johnson v. Southern Scrap Material Co., 96-1978 (La.App. 1st Cir.3/24/97)(unpublished writ).

. See 23 La.Reg. 77 (1997).

. See LSA-R.S. 49:960(A).

. The procedures are outlined in LSA-R.S. 49:953(A).

. The procedural rules pertaining to class actions are found in LSA-C.C.P. arts. 591-597.

. LSA-R.S. 23:1291 (B)(5) requires the OWC’s rules to be consistent with Louisiana law. More specifically, LSA-R.S. 23:1310.1(C) authorizes the OWC to adopt rules of procedure, which are to be promulgated under the Administrative Procedure Act and are to be consistent with workers’ compensation law.